UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS ERNESTO RAMIREZ,<br><br>                                        Petitioner,<br><br>   v.<br><br>KRISTI NOEM, *et al.*,<br><br>                                        Respondents. | Case No. 25-cv-03076-BAS-AHG<br><br>**ORDER:**<br><br>**(1) GRANTING PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 1); AND**<br><br>**(2) TERMINATING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER (ECF No. 2)** |

Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, claiming he was improperly detained without bond pending adjudication of his immigration case. (ECF No. 1.) He requests that he be reinstated on bond. (*Id.*) The Government responded arguing: (1) 8 U.S.C. §§ 1252(g) and 1252(b)(9) strip this Court of jurisdiction; and (2) Petitioner is ineligible for bond and subject to mandatory detention as an "applicant for admission" under 8 U.S.C. § 1225(b)(2). (ECF No. 4.) Petitioner filed a traverse. (ECF No. 7.) For the reasons stated below, the Court **GRANTS** the Petition and

orders Petitioner released on bond on the same terms and conditions previously ordered by an Immigration Judge on July 25, 2025.

## I. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). "The traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates he or she is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The writ is available to non-citizens detained within the United States. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## II. STATEMENT OF FACTS

Petitioner entered the United States in 2004. (Petition ("Pet.") ¶ 1, ECF No. 1.) He lived in the United States for twenty years with his fiancée and five children until he was arrested on June 14, 2025, during an Immigration and Customs Enforcement ("ICE") raid in Los Angeles. (Pet. ¶ 33.) He is currently being held at the Otay Mesa Detention Center in the Southern District of California. (*Id.* ¶ 34.)

On July 25, 2025, an Immigration Judge ordered Petitioner released on a $4,500 bond. (Pet. ¶ 7.) The Government appealed to the Board of Immigration Appeals ("BIA"), and the BIA, relying on the decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), found Petitioner is subject to mandatory detention without bond. (ECF No. 2, Ex. D.) Petitioner argues he is being detained without bond in violation of the Due Process Clause of the Fifth Amendment and requests that he be released on the original $4,500 bond.

## III. ANALYSIS

### A. Jurisdiction

Respondents argue that 8 U.S.C. §§ 1252(g) and 1252(b)(9) strip this Court of jurisdiction to proceed. Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the

1  Attorney General to commence proceedings, adjudicate cases, or execute removal orders
2  against any alien under this chapter."

3  The general rule is to "'resolve any ambiguities in a jurisdiction-stripping statute
4  [such as Section 1252(g)] in favor of the narrower interpretation,' and by the 'strong
5  presumption in favor of judicial review.'" *Ibarra-Perez v. United States*, 154 F.4th 989,
6  995 (9th Cir. 2025) (quoting *Arce v. United States*, 899 F.3d 796, 801 (9th Cir. 2018)).
7  Thus, the Supreme Court has ruled Section 1252(g) applies only to three discrete actions:
8  commencing proceedings, adjudicating cases, or executing removal orders. *Reno v. Am.-*
9  *Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). "Instead of 'sweep[ing] in
10 any claim that can technically be said to arise from the three listed actions,' the provision
11 'refers to just those three specific actions themselves.'" *Ibarra-Perez*, 154 F.4th at 995
12 (alteration in original) (quoting *Jennings v. Rodriguez,* 583 U.S. 281, 294 (2018)). "There
13 are of course many other decisions or actions that may be part of the deportation
14 process . . ." that are not one of these three. *See Reno*, 525 U.S. at 482 (listing possibilities).
15 Section 1252(g) "does not prohibit challenges to unlawful practices merely because they
16 are in some fashion connected to removal orders." *Ibarra-Perez*, 154 F.4th at 997.

17 In this Petition, Petitioner is not contesting the commencement or adjudication of
18 removal proceedings against him, nor is he raising an issue with respect to the execution
19 of removal. His detention pursuant to 8 U.S.C. § 1225(b)(2) may be during, but is
20 nonetheless independent of, the removal proceedings. Thus, this Court is not stripped of
21 jurisdiction by Section 1252(g).

22 Section 1252(b)(9) states, "[j]udicial review of all questions of law and fact,
23 including interpretation and application of constitutional and statutory provisions, arising
24 from any action taken or proceeding brought to remove an alien from the United
25 States . . . shall be available only in judicial review of a final order under this section."

26 "[C]laims that are independent of or collateral to the removal process do not fall
27 within the scope of § 1252(b)(9)." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016).
28 Thus, in *Nielsen v. Preap*, 586 U.S. 392 (2019), the Supreme Court held Section 1252(b)(9)

inapplicable when the petitioners were not asking for review of an order of removal, were not challenging the decision to detain them in the first place or to seek removal, and were not challenging any part of the process by which removability would be determined. *Id.* at 402 (citing *Jennings*, 583 U.S. at 294).

Here, Petitioner does not challenge the Government's authority to remove him from the United States in this Petition. Instead, he challenges his classification under Section 1225(b)(2) instead of Section 1226(a) and the BIA's decision that immigration judges lack authority to provide a bond under Section 1225(b)(2). Thus, Section 1252(b)(9) does not provide a jurisdictional bar.

### B.  Applicability of Section 1225(b)(2) Versus Section 1226(a)

The primary disagreement between the parties is whether Petitioner is now, after twenty years of residency in the United States, subject to discretionary release as originally ordered by the Immigration Judge pursuant to 8 U.S.C. § 1226(a) or, as the BIA has ruled in *Yajure Hurtado*, 29 I. & N. Dec. 216, subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). This Court agrees with the multitude of cases that have concluded that applying Section 1225 in this situation "(1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, __F. Supp. 3d__, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (citing cases).

"We begin, as always, with the text." *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 391 (2017). Section 1225(b)(2)(A) applies to an applicant "seeking admission" to the United States, whereas Section 1226(a) applies to individuals who have been arrested "on a warrant issued by the Attorney General." 8 U.S.C. §§ 1225(b)(2)(A), 1226(a). "Seeking," as noted by other courts, "means 'asking for' or 'trying to acquire or gain.'" *Lepe*, 2025 WL 2716910, at *5 (citing Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/seeking). "And the use of a present

participle, 'seeking,' necessarily implies some sort of present-tense action." *Id.* (citation modified). As noted by the Southern District of New York:

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater . . . . Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission."

*Lopez Benitez v. Francis*, __F. Supp. 3d__, 2025 WL 2371588, at *7 (S.D.N.Y. Aug. 13, 2025). Respondents point to Section 1225(a)(1), which states, "[a noncitizen] present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." However, if Section 1225 was intended to apply to all applicants for admission, "there would be no need to include the phrase 'seeking admission' in the statute." *Lopez Benitez*, 2025 WL 2371588, at *6; *see also Vasquez-Garcia v. Noem*, No. 25-cv-2180-DMS-MMP, 2025 WL 2549431, at *6 (S.D. Cal. Sept. 3, 2025) ("Only those who take affirmative acts, like submitting an application for admission, are those who can be said to be 'seeking admission' within § 1225(b)(2)(A).").

Furthermore, Respondents' interpretation ignores the statutory scheme. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Lepe*, 2025 WL 2716910, at *6 (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)). "Section 1225 'authorizes the Government to detain certain aliens *seeking admission* into the country,' whereas section 1226 'authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings.'" *Id.* (quoting *Jennings*, 583 U.S. at 287). This is reinforced by the title of Section 1225: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C. § 1225. "'Inspection' is a process that occurs at the border or other ports of entry." *Lepe*, 2025 WL 2716910, at *6 (citing *Posos-Sanchez v. Garland*, 3 F.4th 1176, 1183 (9th Cir. 2021)).

Petitioner, under the plain meaning of the statute, is not seeking admission to the United States. He has lived in the United States for twenty years. He was not arrested at the border or a port of entry where he was subject to inspection. Instead, he was arrested while already in the United States, and, thus, is subject to Section 1226(a).

To the extent the addition of Section 1225(a) renders the two statutes ambiguous or unclear as to which section applies, the Court turns to principles of statutory construction. *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1256 (W.D. Wash. 2025) ("[E]ven when a statute is ambiguous or internally contradictory, courts must 'use every tool at their disposal to determine the best reading of the statute.'" (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024))). "[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Rodriguez*, 779 F. Supp. 3d at 1258 (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).

Section 1226 carves out a statutory category of non-citizens who, despite being arrested while already in the country, may not be released because of their criminal or terrorist activities. 8 U.S.C. § 1226(c). If, as Respondents argue, all non-citizens arrested while already in this country are subject to mandatory detention under § 1225, there would be no need to carve out an exception for those who had committed criminal or terrorist activities. *See Rosado v. Figueroa*, No. CV 25-2157-DHX-DLR (CDB), 2025 WL 2337099, at *9 (D. Ariz. Aug. 11, 2025) (reasoning that if Section 1225's "mandatory detention provisions apply to all noncitizens present in the United States who have not been admitted, it would render superfluous provisions of § 1226 that apply to certain categories of inadmissible noncitizens"); *Rodriguez*, 779 F. Supp. 3d at 1258 (noting that if the court were to adopt a reading of Section 1225 advanced by the BIA, it would render significant portions of Section 1226(c) meaningless). To avoid rendering Section 1226(c) completely meaningless, the Court finds non-citizens arrested on a warrant in the interior of the United States are subject to discretionary release on bond under Section 1226(a), not mandatory detention under Section 1225(b)(2)(A).

In addition, "the longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is." *Rosado*, 2025 WL 2337099, at *10 (citation modified) (quoting *Loper Bright*, 603 U.S. at 386). "Until this year, DHS has applied section 1226(a) and its regime of discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation—a practice codified by regulation." *Valencia Zapata v. Kaiser*, __F. Supp. 3d __, 2025 WL 2741654, at *4 (N.D. Cal. Sept. 26, 2025) (citation modified); *see also* Inspection & Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

Against this backdrop, Congress adopted the Laken Riley Act, adding Section 1226(c)(1)(E), which mandates detention for additional categories of criminal aliens. "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Rodriguez*, 779 F. Supp. 3d at 1259 (quoting *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995), *abrogated on other grounds by Riley v. Bondi*, 606 U.S. 259, 261 (2025)). "When Congress adopts a new law against the backdrop of a 'longstanding administrative construction,' courts 'generally presume the new provision should be understood to work in harmony with what has come before.'" *Id.* (quoting *Monsalvo Velazquez v. Bondi*, 604 U.S. 712, 725 (2025)).

The longstanding practice of DHS applying Section 1226 to those arrested in the interior of the United States supports the finding that this practice was the best reading of the statute. This conclusion is particularly true because adopting Respondents' interpretation would result in the recently enacted Laken Riley Act being completely meaningless and unnecessary.

Statutory interpretation supports that Section 1226(a), not Section 1225(b)(2)(A), applies to Petitioner's immigration detention. Because the BIA's decision binding Immigration Judges incorrectly provides that Petitioner is subject to mandatory detention

with no individualized bond determination, Petitioner is being held in violation of federal law.[1]  Hence, his petition is **GRANTED.**[2]

## IV. CONCLUSION

For the reasons stated above, Petitioner Douglas Ernesto Ramirez's Petition for Writ of Habeas Corpus is **GRANTED**.  The Court issues the following writ:

> The Court **ORDERS** Respondents to release Douglas Ernesto Ramirez (A240-284-259) on the same $4,500 bond and conditions of release as ordered by the Immigration Judge on July 25, 2025.

In light of this Order, the Motion for Temporary Restraining Order filed simultaneously with the Petition (ECF No. 2) is **TERMINATED AS MOOT**.  Finally, the Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

DATED: December 3, 2025

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

---

[1] Respondents argue the Court must order a new bond hearing in light of 8 U.S.C. § 1226(e), but the Court is unconvinced.  Here, the Court is not setting aside the discretionary decision to grant or revoke bond.  *See id.*; *see also Prieto-Romero v. Clark*, 534 F.3d 1053, 1058 (9th Cir. 2008).  Rather, the Court is leaving in place the Immigration Judge's discretionary bond determination, which the BIA did not disturb beyond applying *Yajure Hurtado*, 29 I. & N. Dec. 216, to Petitioner's case.

[2] Petitioner filed a Supplemental Brief apprising the Court of the certification of a class under Federal Rule of Civil Procedure 23(b)(2) in the Central District of California. (ECF No. 14.)  However, because the Court already concludes Petitioner is entitled to relief, and because this Court has jurisdiction over him under 28 U.S.C. § 2241, the Court does not consider the impact of that ruling under the doctrines of res judicata and collateral estoppel.  *Cf. Dosier v. Miami Valley Broad. Corp.*, 656 F.2d 1295, 1299–01 (9th Cir. 1981).